UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| PERI & SONS FARMS, INC., a Nevada corporation, | ) ) ) 3:11-cv-00757-VPC |
| Plaintiff, | ) ) |
| v. | ) **ORDER** ) |
| JAIN IRRIGATION, INC., a corporation, and AGRI-VALLEY IRRIGATION, INC., a corporation, | ) ) ) ) |
| Defendants. | ) February 4, 2013 ) |

Before the court is defendant Jain Irrigation, Inc.'s second motion in limine (#105).[1] Defendant Agri-Valley Irrigation, Inc. filed a partial joinder (#117). Plaintiff opposed (#118). Neither defendant replied. The court has thoroughly reviewed the record and the parties' arguments. Defendant Jain Irrigation, Inc.'s second motion in limine (#105) is GRANTED in part and DENIED in part.

**I. HISTORY & PROCEDURAL BACKGROUND**

In 2010, plaintiff Peri & Sons Farms, Inc. ("plaintiff") purchased irrigation drip tape from defendant Agri-Valley Irrigation, Inc. ("Agri-Valley") to irrigate its 2011 commercial onion crop in Mason Valley, Nevada (#86, p. 2).[2] Plaintiff ordered approximately 8,967 rolls of irrigation drip

---

[1] Refers to the court's docket numbers.
[2] Irrigation drip tape is similar to a flat tube and contains small openings known as "emitters" (#86, p. 2 fn. 1; #100, p. 4). The drip tape is buried in the seed beds before planting. After the onions are planted, irrigation water is pumped into the drip tape and exits the tape through the emitters, allowing for a designated rate of flow to irrigate the planted onions below the ground's surface. *Id.*

tape, which were manufactured by defendant Jain Irrigation, Inc. ("Jain") (#86, p. 2; #100, p. 3).[3] Jain manufactured the irrigation drip tape and delivered it directly to plaintiff in Yerington, Nevada (#100, pp. 10, 20).

Plaintiff alleges that the drip tape it received from Jain was defective because the emitters, or slits in the drip tape, were misplaced so that the slits were blocked or partially blocked. Thus, the drip tape failed to emit water at the designated rate of flow and failed to sufficiently irrigate plaintiff's onion crops (#64, p. 23; #100, pp. 3, 21). Jain admits that portions of its irrigation drip tape contained slits that were blocked or partially blocked by the tape's glue seam due to a manufacturing defect; and admits that those portions of the drip tape failed to function properly (#86, p. 2; #94, p. 8). Jain also admits that the root cause of the manufacturing defect was machine instability at its manufacturing facility in Watertown, New York (#94, p. 8).

The parties dispute centers around the amount of damages plaintiff sustained as a result of Jain's defective irrigation drip tape. Jain maintains that mitigation efforts were largely successful, and that plaintiff was able to harvest a good onion crop with only a small decrease in quality compared to the previous two-year average, and with no decrease in overall pack-out yield compared to the previous two-year average. *Id.* Plaintiff asserts that it experienced a larger reduction in quality, as well as a reduction in yield, each of which translated into lost profits, and that it also incurred mitigation expenses (#94, p. 8; #100, p. 23).

On May 21, 2012, plaintiff filed its First Amended Complaint (#64), alleging the following causes of action: (1) breach of contract against Agri-Valley; (2) breach of the implied covenant of good faith and fair dealing against Agri-Valley; (3) breach of express warranty against Agri-Valley and Jain; (4) breach of the implied warranty of merchantability against Agri-Valley and Jain; (5)

---

[3] Agri-Valley is an independent distributor of Jain's products (#86, p. 2).

breach of the implied warranty of fitness for a particular purpose against Agri-Valley and Jain; (6) fraudulent concealment against Jain; (7) strict products liability against Jain; (8) negligence against Jain; (9) promissory estoppel against Jain; and (10) breach of oral contract against Jain. *Id.*

On January 15, 2013, the court granted Jain's motion for partial summary judgment (#86) on plaintiff's tort claims and prayer for punitive damages. Thus, plaintiff's claims for strict products liability, negligence and fraudulent concealment, as well as plaintiff's prayer for punitive damages are no longer at issue in this litigation.

Jain has filed its second motion in limine, asking the court to exclude evidence of the following matters at trial:

1. An investigative report prepared by Bart Thompson of ICS Merrill at the request of Jain's liability insurer, as well as Mr. Thompson's oral communications regarding his investigation.

2. Complaints Jain received from other customers or end users prior to, contemporaneously with, or subsequent to, Jain's receipt of plaintiff's complaint.

3. Other litigation and settlements involving Jain's products.

4. Specified deposition testimony from Aric Olson, Jain's Rule 30(b)(6) designee.

5. Evidence of Jain's financial condition and profitability.

6. Documents or testimony referring to the fact that Jain or Agri-Valley carries liability insurance.

7. Documents or testimony regarding settlement negotiations between Agri-Valley and Jain; tenders of defense and indemnity by Agri-Valley or acceptances of such tenders by Jain's liability insurer; threats of litigation by Agri-Valley against Jain; and unfiled draft pleadings prepared by Agri-Valley for filing against Jain.

8. The fact that Jain has made any motion in limine.

Agri-Valley has joined Jain's second motion in limine as to matters 1, 5, 6, and 8.

## II. DISCUSSION & ANALYSIS

**A.   Legal Standards**

**1. Motions in Limine**

A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed. 2009). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). In the Ninth Circuit, motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence." *Lopes v. Viera*, 2012 WL 691995, at *2 (E.D.Cal. March 2, 2012) (internal quotation marks and citations omitted). Moreover, "[m]otions in limine address *evidentiary questions* and are inappropriate devices for resolving substantive issues." *Id*. at *9 (internal quotation marks and citations omitted) (emphasis in original).

**B.   Analysis**

**1. Bart Thompson's investigative report & oral communications**

Jain states that after plaintiff informed Jain that it was having problems with the irrigation drip tape, Jain's liability insurer, Chartis Specialty Insurance Company ("Chartis") retained insurance claim investigator Bart Thompson of CSI Merrill to investigate plaintiff's alleged crop loss (#105, pp. 2-3). On September 1, 2011, Mr. Thompson inspected seven of plaintiff's fields near Yerington, Nevada (#105-2, Ex. 1-A, Bates No. J10186). On September 10, 2011, an aerial

photographer photographed plaintiff's fields. *Id.* at Bates No. J10193.  Jain contends that Mr. Thompson's written report and any witness's account of Mr. Thompson's oral communications regarding his investigation are inadmissible hearsay, and should be excluded from trial (#105, p. 3). In the alternative, Jain argues that Mr. Thompson was not qualified to opine about plaintiff's alleged crop damage, as he is not an onion expert or a farmer, but a retired police officer. *Id.* at 3-4.  Jain also argues that the admission of Mr. Thompson's written report or his alleged oral communications would confuse the jury and be unfairly prejudicial to Jain, as this evidence suggests that Jain's liability insurer may satisfy a verdict against Jain or Agri-Valley. *Id.* at 4.  In sum, Jain contends that Mr. Thompson's written report and his alleged oral communications are inadmissible hearsay, lack foundation, will confuse the jury and be unfairly prejudicial to Jain, and will suggest the existence of liability insurance, in contravention of Fed.R.Evid. 402, 403, 411, 602, 701, 702, 703, and 802.

Plaintiff states that after Mr. Thompson's visit to Yerington, Nevada, he issued a written report, which stated, "There are areas of crop damage . . ." (#105-2, Ex. 1-A, Bates No. J10193). The report also contained video and photographs of plaintiff's fields (#118, p. 3).  Plaintiff alleges that Jain will attempt to introduce the video and photographs to prove that plaintiff obtained a decent onion crop and suffered only minimal crop loss. *Id.*  Plaintiff asserts that it would be unfair for Jain to use a portion of Mr. Thompson's report (the video and photographs) while excluding the rest (the written observations and conclusions). *Id.* at 4.  Plaintiff contends that Mr. Thompson's written findings are admissible to impeach Jain's apparent claim that the video and photographs show minimal crop damage. *Id*.  Plaintiff also contends that even if Mr. Thompson's written report is hearsay, the report falls within two hearsay exceptions, described in Fed.R.Evid. 803(1) and 701. *Id.* Finally, plaintiff argues that it should be permitted to establish that the video and photographs were

taken by Jain's insurance company's investigator; and therefore, the jury should question whether the video and photographs are representative of all of plaintiff's fields.[4] *Id.* at 3.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Hearsay that is not subject to an exemption or exception is inadmissible at trial. Fed.R.Evid. 802. Here, the court finds that Mr. Thompson's written report is hearsay, as it is an out-of-court statement that plaintiff wishes to offer for the truth of its contents, i.e., that Mr. Thompson observed crop damage in plaintiff's fields. Any witness's testimony concerning Mr. Thompson's oral communications would also constitute hearsay. Although plaintiff alleges that the written report is subject to the hearsay exceptions outlined in Fed.R.Evid. 803(1) and 701, the court finds this contention has no merit.[5] Thus, the court finds that Mr. Thompson's written report and his alleged oral communications about the investigation are inadmissible hearsay.

Further, the court finds that admission of Mr. Thompson's written report could be unduly prejudicial to Jain, as it would alert the jury that Jain has liability insurance, which may satisfy any verdict against it. *See* Fed.R.Evid. 403, 411.

In summary, the court finds that Mr. Thompson's written investigative report and oral communications regarding his investigation are inadmissible hearsay, and may not be introduced into evidence at trial. Further, the court finds that the report could be unduly prejudicial to Jain, as it would alert the jury that Jain is covered under its liability insurance policy. Accordingly, the court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to Bart Thompson's investigative report and oral communications.

---

[4] To the extent plaintiff argues that it should be permitted to inform the jury that the video and photographs were taken by Mr. Thompson, the court declines to address these arguments, as they are outside the scope of Jain's motion.
[5] Fed.R.Evid. 803(1) is the hearsay exception for present sense impression—"a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed.R.Evid. 701 covers opinion testimony by a lay witness. The court finds that neither of these exceptions applies to the written report at issue.

### 2. Complaints received prior to, contemporaneously with, or subsequent to, Jain's receipt of plaintiff's complaint

Jain states that it received five customer complaints between January 1, 2006 and December 31, 2010, prior to the delivery of plaintiff's irrigation drip tape; and that it also received three customer complaints after plaintiff's irrigation drip tape had been manufactured, delivered, and installed (#105, pp. 5-6). Jain asserts that the irrigation drip tape delivered to these other customers had different specifications than the product delivered to plaintiff, and that admission of this evidence would be irrelevant, unfairly prejudicial to Jain, confuse the jury, and lead to a substantial waste of time. *Id.* Specifically, Jain asserts that if the court were to admit evidence of other customer complaints, the jury would infer that it should award damages to punish Jain in connection with irrigation drip tape delivered to customers who are not before the court. *Id.*

Plaintiff argues that complaints from other farmers tend to prove that Jain knew that it could not produce irrigation drip tape with a white indicator stripe, yet concealed this information (#118, pp. 5-6).

Only relevant evidence is admissible at trial. Fed.R.Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." Fed.R.Evid. 401. Even relevant evidence may be excluded if it misleads the jury, confuses the issues, creates unfair prejudice to a party, wastes time, or is needlessly cumulative. *See* Fed.R.Evid. 403.

Jain has admitted that some of the irrigation drip tape it shipped to plaintiff suffered from a manufacturing defect (#105, p. 6). Thus, the issues in this case are what percentage of the approximately 8,967 rolls of irrigation drip tape that Jain delivered to plaintiff suffered from the manufacturing defect, and what damages are attributable to this defect. The court finds that evidence of different irrigation drip tape manufactured for *other customers* is simply not relevant to

the issues in this case—what percentage of *plaintiff's* drip tape contained a manufacturing defect and what damages are attributable to that defect.

In addition, evidence of complaints from eight other farmers could suggest to the jury that it should award damages based on harm allegedly suffered by other growers, instead of harm suffered by plaintiff. This could be unfairly prejudice to Jain and confuse the jury as to the actual issues in this litigation.

Further, Jain has admitted that its manufacturing defect stemmed from machine instability at its manufacturing facility in Watertown, New York (#94, p. 8). If the court were to admit evidence of alleged manufacturing defects in different irrigation drip tape sent to eight other customers, the jury would necessarily be subject to a time-consuming analysis of the machine conditions giving rise to those alleged defects, the distinctions between the other customers' drip tape and plaintiff's drip tape, and other factors which may have played a role in the problems reported by these other customers. The court finds this approach would introduce irrelevant information and waste valuable court time and resources.

Finally, plaintiff's argument that other customer complaints would establish that Jain knew of its manufacturing defect before shipping plaintiff's irrigation drip tape is irrelevant to plaintiff's remaining claims. On January 15, 2013, the court granted Jain's motion for partial summary judgment on plaintiff's tort claims (strict products liability, negligence and fraudulent concealment), as well as plaintiff's prayer for punitive damages. Plaintiff has not established that Jain's knowledge is an element of any of the remaining claims.

In short, admission of this evidence would be irrelevant, could confuse the jury, create unfair prejudice to Jain, and waste valuable court time. Accordingly, the court GRANTS Jain's second

motion in limine (#105) as to complaints received prior to, contemporaneously with, or subsequent to, Jain's receipt of plaintiff's complaint.

### 3. Other litigation and settlements

Jain asks the court to exclude testimony or evidence that Jain has resolved other claims or litigation through the settlement process (#105, p. 7). Jain asserts that the fact that it has been involved in other litigation is not relevant to the issues in this case, and may prejudice the jury against Jain based on conduct which has nothing to do with the manufacture of plaintiff's irrigation drip tape. *Id.* Plaintiff asserts that it does not intend to offer evidence of other lawsuits or settlements involving Jain; and therefore, does not object to this portion of Jain's motion.

Accordingly, the court GRANTS Jain's second motion in limine (#105) as to other litigation and settlements involving Jain's products.

### 4. Testimony from Aric Olson

Jain states that during an exchange between its corporate designee, Aric Olson, and plaintiff's counsel, Mr. Olson stated he believes this lawsuit to be a waste of time and that plaintiff's motive behind the lawsuit is to "try to make money on someone else's back" (#105-2, Ex. 1-B, *Deposition of Aric Olson*, 84:15-85:16). Jain opines that at trial plaintiff may ask Mr. Olson if Jain believes this lawsuit to be a waste of time, and then attempt to impeach him with his prior deposition testimony (#105, p. 9). Jain argues that Mr. Olson's personal opinion regarding plaintiff's motivation for filing this action is irrelevant, as it does not tend to prove or disprove any material fact in this litigation. *Id.* at 10.

Plaintiff avers that Fed.R.Civ.P. 32(a)(3) permits it to utilize Mr. Olson's deposition testimony, and that Mr. Olson's testimony is relevant for impeachment purposes (#118, p. 7). Plaintiff contends that Jain will adopt a conciliatory tone at trial in an attempt to gain favor with the

jury. *Id.* at 6. Plaintiff asserts that Mr. Olson may testify that this lawsuit involves an unfortunate situation in which defective product slipped through Jain's quality control process and that Jain is sorry for any problems plaintiff experienced. *Id.* Plaintiff argues that if Jain presents this defense, the jury should hear Mr. Olson's contradictory deposition testimony revealing his true feelings, i.e., that this lawsuit is a waste of time and that plaintiff is trying to "make money on someone else's back." *Id.* at 7.

Fed.R.Civ.P. 32(a)(1) provides, "At a hearing or trial, all or part of a deposition may be used against a party . . . (B) . . . to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying . . .." The Federal Rules of Evidence provide that only relevant evidence is admissible, which is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed.R.Evid. 401 & 402. In addition, even relevant evidence may be excluded if it misleads the jury, confuses the issues, creates unfair prejudice to a party, wastes time, or is needlessly cumulative. *See* Fed.R.Evid. 403.

The issue in this litigation is the extent of plaintiff's damages that are attributable to Jain's defective irrigation drip tape. Whether Mr. Olson believes plaintiff's lawsuit is a waste of time or that plaintiff is trying to "make money on someone else's back" is irrelevant. Mr. Olson's opinion as to the merits of plaintiff's claims, whether in his personal capacity or as Jain's corporate designee, simply does not have any tendency to make a material fact "more or less probable than it would be without the evidence." *See* Fed.R.Evid. 401. Mr. Olson's opinion does not assist the jury in determining to what extent plaintiff's onion crop suffered damage or provide any insight into how much of plaintiff's alleged damages are attributable to Jain's defective irrigation drip tape.

Accordingly, the court GRANTS Jain's second motion in limine (#105) as to Aric Olson's testimony.

### 5. Jain's financial condition & profitability

Jain states that plaintiff may attempt to introduce evidence of Jain's financial condition and profitability in an attempt to show that Jain cuts corners during its manufacturing process to realize a profit (#105, p. 10). Jain contends that any references to its financial condition and profitability are irrelevant, particularly if the court grants Jain's motion for partial summary judgment (#86) with respect to plaintiff's prayer for punitive damages. *Id.* at 11. Plaintiff argues that evidence of Jain's financial condition and profitability is relevant to plaintiff's tort claims because it indicates that Jain knowingly delivered a defective product (#118, p. 7).

N.R.S. 42.005(3)-(4) provides that evidence of a defendant's financial condition is not admissible unless and until the court convenes a second, bifurcated phase of trial to determine the amount of punitive damages to be assessed.[6] On January 15, 2013, the court granted Jain's motion for partial summary judgment on plaintiff's tort claims and prayer for punitive damages (#120). Thus, plaintiff's prayer for punitive damages is no longer viable, and the court will not convene a second phase of trial to determine the amount of punitive damages to be assessed. As Jain's financial condition is not relevant to plaintiff's remaining prayer for compensatory damages, Jain's financial condition is inadmissible. Further, whether Jain knowingly delivered a defective product is now a moot issue, as plaintiff's claims for strict products liability, negligence and fraudulent concealment have been dismissed. As Jain's knowledge is no longer an element of any remaining claim, the court finds that evidence of Jain's profitability is also irrelevant and inadmissible.

Accordingly, the court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to Jain's financial condition and profitability.

---

[6] The parties agree that Nevada law governs the issues in this case.

### 6. Jain or Agri-Valley's liability insurance

Jain states that Chartis is Jain's liability insurer in connection with plaintiff's claims (#105, p. 11). Chartis has also agreed to defend and indemnify Agri-Valley, subject to a reservation of rights (#105-2, Ex. 1-K, Bates No. JI2922-JI2924, Ex. 1-L, Bates No. JI3052-JI3054). Jain contends that any reference to its liability insurance is inadmissible, and asks the court to exclude any oral argument, questions, or testimony concerning its liability insurance, along with the following trial exhibits:

a. Letter from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-M, Bates No. JI3033-JI3036; #93, p. 21, plaintiff's deposition Ex. 15).

b. E-mail and attachment from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-M, Bates No. JI2975-JI2976; #93, p. 21, plaintiff's deposition Ex. 16).

c. ICS Merrill Confidential Investigative Report dated September 13, 2011 (#105-2, Ex. 1-M, Bates No. JI0186-JI0194; #93, p. 22, plaintiff's deposition Ex. 18).

d. Email from Steve Johnson to Aric Olson, *et. al*. (#105-2, Ex. 1-M, Bates No. JI0558; #93, p. 22, plaintiff's deposition Ex. 38).

e. AON Facsimile Transmittal (#105-2, Ex. 1-M, Bates No. JI0554-JI0557, JI0552-JI0553; #93, p. 22, plaintiff's deposition Ex. 59).

f. Letter from Chartis to Dale Dorfmeier (#105-2, Ex. 1-M, Bates No. JI2922-JI2924; #93, p. 23).

g. Letter from Chartis Claims to Dale Dorfmeier (#105-2, Ex. 1-M, Bates No. JI3053-JI3054; #93, p. 23).

Jain also contends that communications from ICS Merrill, AON, or Chartis are also inadmissible on hearsay grounds.

Plaintiff argues that Fed.R.Evid. 411 does not preclude evidence of liability insurance in all circumstances, and that the court should wait until trial to determine under what circumstances Jain's insurance coverage is or is not admissible (#118, p. 8). Plaintiff asserts that it may wish to introduce

evidence of the defense and indemnity agreement between Agri-Valley and Chartis for impeachment purposes, or to show the bias of Agri-Valley's witnesses. *Id.*

Fed.R.Evid. 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

The court finds that evidence of Jain's liability insurance or Agri-Valley's defense and indemnity agreement with Chartis is inadmissible to prove that: (1) Jain has liability insurance; (2) Agri-Valley has a defense and indemnity agreement with Jain's liability insurer; or (3) wrong-doing on the part of Jain or Agri-Valley. However, depending on the testimony of Agri-Valley's proposed witnesses, evidence of Agri-Valley's defense and indemnity agreement with Jain's liability insurer may be relevant and admissible to establish bias. Thus, the court will defer its ruling until such issues present themselves at trial.

Accordingly, the court DEFERS ruling on Jain and Agri-Valley's second motion in limine (#105) as to documents or testimony referring to the fact that Jain or Agri-Valley carries liability insurance.

**7. Settlement negotiations, tenders/acceptances of defense and indemnity, threats of litigation, unfiled draft pleadings**

Jain titles this portion of its motion:

Documents or testimony regarding settlement negotiations between Agri-Valley and Jain, tenders of defense and indemnity by Agri-Valley or acceptances of such tenders by Jain's insurer, threats of litigation by Agri-Valley against Jain, and unfiled draft pleadings prepared by Agri-Valley for filing against Jain (#105, p. 12).

Despite the lengthy title, it appears that Jain is asking the court to exclude five pieces of documentary evidence, along with testimony referring to that evidence:

a. Letter from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-N, Bates No. JI3033-JI3036).

    b. E-mail and attachment from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-O, Bates No. JI2975-JI2976).

    c. Agri-Valley's draft cross-claim against Jain (#105-2, Ex. 1-P).

    d. Letter from Chartis to Dale Dorfmeier (#105-2, Ex. 1-K, Bates No. JI2922-JI2924); and

    e. Letter from Chartis Claims to Dale Dorfmeier (#105-2, Ex. 1-L, Bates No. JI3053-JI3054).

Jain alleges that early in the litigation, Agri-Valley made a demand upon Jain and its liability insurer, Chartis, to defend and indemnify Agri-Valley against any losses incurred in the litigation (#105, p. 12). Agri-Valley's former counsel, Mr. Dorfmeier, attached a draft cross-claim against Jain in one of his email correspondences (#105-2, Ex. 1-O, Bates No. JI2975-JI2976; #105-2, Ex. 1-P). Jain asserts that Mr. Dorfmeier's communications were intended to persuade Jain or Chartis to accept Agri-Valley's tender of defense and indemnity and protect it in this suit (#105, p. 13). Thus, Jain contends Mr. Dorfmeier's communications constitute settlement discussions, and are inadmissible pursuant to Fed.R.Evid. 408. Jain also contends that Mr. Dorfmeier's communications reference Jain's liability insurer, and are inadmissible pursuant to Fed.R.Evid. 411. Finally, Jain contends that threats of litigation by Agri-Valley's former counsel are irrelevant, and if admitted would be confusing to the jury and unfairly prejudicial to Jain. *Id.*

Plaintiff asserts that even though it undisputable that Agri-Valley sold plaintiff a defective product, Agri-Valley has denied that it breached its contract (#118, p. 9). Plaintiff contends that to the extent Agri-Valley maintains that it did not breach the parties' contract, plaintiff should be permitted to impeach Agri-Valley with its draft cross-claim, which specifically states that Jain sold Agri-Valley the same non-conforming goods that Agri-Valley sold plaintiff. *Id.* Plaintiff also contends that Agri-Valley will try to convince the jury that it is unfairly facing liability because Jain manufactured the defective product and Agri-Valley was merely the middleman seller. *Id.* Thus,

plaintiff asserts that Agri-Valley should be forced to explain why it did not pursue available legal remedies, including filing a cross-claim against Jain. *Id.*

Fed.R.Evid. 408(a) states that conduct or statements made during compromise negotiations are inadmissible to prove or disprove the validity or amount of the disputed claim or to impeach by a prior inconsistent statement or contradiction. However, the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice. Fed.R.Evid. 408(b).

Here, the court finds that several of Mr. Dorfmeier's communications with Jain and Jain's liability insurer constitute statements made during compromise negotiations. Specifically, the court finds that: (a) the letter from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-N, Bates No. JI3033-JI3036); (b) the e-mail and attachment from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-O, Bates No. JI2975-JI2976); and (c) Agri-Valley's draft cross-claim against Jain (#105-2, Ex. 1-P), all contain statements negotiating Agri-Valley's defense and indemnity agreement.[7] Thus, the court finds that these three pieces of documentary evidence fall within Rule 408(a)'s admonition that statements made during compromise negotiations are inadmissible.

Plaintiff argues that the contents of Agri-Valley's draft cross-claim are admissible to impeach Agri-Valley's witnesses if Agri-Valley maintains it did not breach its contract with plaintiff. However, Rule 408 specifically states that statements made during compromise negotiations may not be used to impeach by a prior inconsistent statement or contradiction. Agri-Valley's draft cross-claim was created to persuade Jain or Chartis to accept Agri-Valley's tender of defense and indemnity; thus, constitutes a statement made during a compromise negotiation, falling within the purview of Rule 408. Accordingly, plaintiff may not use Agri-Valley's draft cross-claim for

---

[7] The court does not find that: (d) the letter from Chartis to Dale Dorfmeier (#105-2, Ex. 1-K, Bates No. JI2922-JI2924); or (e) the letter from Chartis Claims to Dale Dorfmeier (#105-2, Ex. 1-L, Bates No. JI3053-JI3054), contain statements negotiating Agri-Valley's defense and indemnity agreement. Instead, these two documents simply confirm the result of the defense and indemnity negotiations—that Chartis accepted Agri-Valley's tender of defense and indemnity.

impeachment purposes. To the extent plaintiff wishes to introduce Agri-Valley's draft cross-claim to suggest that a proposed Agri-Valley witness is biased or prejudiced, the court fails to see how the draft cross-claim would accomplish this purpose. As noted before, depending on the testimony, the court may permit plaintiff to establish that a particular Agri-Valley witness is biased by introducing evidence that Agri-Valley and Chartis entered into a defense and indemnification agreement. The fact that Agri-Valley's former counsel drafted a cross-claim again Jain does not evidence bias. Thus, the court finds that Mr. Dorfmeier's draft cross-claim against Jain is inadmissible.

In addition, the court finds that evidence of an unfiled and unsigned draft pleading could confuse the issues, mislead the jury, and create unfair prejudice to both Jain and Agri-Valley. *See* Fed.R.Evid. 403.

In short, the court finds that: (a) the letter from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-N, Bates No. JI3033-JI3036); (b) the e-mail and attachment from Dale Dorfmeier to Dan Hayward (#105-2, Ex. 1-O, Bates No. JI2975-JI2976); and (c) Agri-Valley's draft cross-claim against Jain (#105-2, Ex. 1-P), are documents created during the course of compromise discussions to negotiate Agri-Valley's defense and indemnity agreement. These documents are inadmissible pursuant to Fed.R.Evid. 408.

Accordingly, the court GRANTS in part and DENIES in part Jain's second motion in limine (#105) as to settlement negotiations, tenders/acceptances of defense and indemnity, threats of litigation, and unfiled draft pleadings to the extent of the court's analysis above.

**8. Jain's motions in limine**

Jain alleges that the fact that any party has exercised its procedural right to file a motion in limine is not a proper subject for comment or argument during trial (#105, p. 14). Jain contends that no party should be permitted to comment that another party has tried to keep the jury from hearing

particular information, or that a party would have liked to present certain evidence but the court disallowed it. *Id.*

Plaintiff states that it does not intend to introduce evidence that any party has filed a motion in limine. However, plaintiff contends that a broad in limine ruling would be improper because a party may be forced to draw the court's attention to its in limine rulings in order to lodge an objection at trial (#118, p. 10). Plaintiff also contends that a party should be able to argue that another party has failed to introduce evidence on a particular issue, without referencing motions in limine. *Id.*

The argument that an opposing party has filed a motion in limine to prevent the jury from hearing particular evidence is improper. The parties may not draw the jurors' attention to the fact that certain evidence exists, but the jurors are precluded from hearing it. Obviously, if any party believes another party has violated the court's pre-trial rulings, they may object on the grounds that the question or evidence violates the court's pre-trial orders.

Accordingly, the court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to the fact that a party has made a motion in limine to the extent of the court's analysis above.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that Jain's second motion in limine (#105) is hereby **GRANTED in part** and **DENIED in part**, as follows:

1. The court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to Bart Thompson's investigative report and oral communications.

2. The court GRANTS Jain's second motion in limine (#105) as to complaints received prior to, contemporaneously with, or subsequent to, Jain's receipt of plaintiff's complaint.

3. The court GRANTS Jain's second motion in limine (#105) as to other litigation and settlements involving Jain's products.

4. The court GRANTS Jain's second motion in limine (#105) as to Aric Olson's testimony.

5. The court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to Jain's financial condition and profitability.

6. The court DEFERS ruling on Jain and Agri-Valley's second motion in limine (#105) as to documents or testimony referring to the fact that Jain or Agri-Valley carries liability insurance.

7. The court GRANTS in part and DENIES in part Jain's second motion in limine (#105) as to settlement negotiations, tenders/acceptances of defense and indemnity, threats of litigation, and unfiled draft pleadings to the extent of the court's analysis above.

8. The court GRANTS Jain and Agri-Valley's second motion in limine (#105) as to the fact that a party has made a motion in limine to the extent of the court's analysis above.

IT IS SO ORDERED.

**DATED:** February 4, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**